UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

ERIC RASHAD WALTON,            )
                               )
            Plaintiff          )
                               )
      v.                       ) Case No. 2:10-cv-188
                               )
UNITED STATES STEEL            )
CORPORATION,                   )
                               )
            Defendant          )

<u>OPINION AND ORDER</u>

This matter is before the court on the Motion for Summary Judgment [DE 54] filed by the defendant, United States Steel Corporation, on April 30, 2012. For the reasons set forth below, the motion is **GRANTED.**

<u>Background</u>

The plaintiff, Eric Rashad Walton, began working for U.S. Steel at its manufacturing facility in Gary, Indiana, on February 2, 2006. Walton was a member of the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial Services Workers International Union. The union negotiated a Basic Labor Agreement with U.S. Steel that governed the terms and conditions of its members' employment. The BLA set forth the discrimination policies and procedures for reporting incidents, as well as the grievance, discipline, and discharge process. The BLA stated that "[n]o employee will be disciplined or discriminated against in any way solely for suffering an injury or

illness or for reporting an accident in good faith."  U.S. Steel
promulgated procedures for employees to report misconduct to the
Employee Relations Department, or if the employee was uncomfort-
able with reporting the violation to the company, he could file a
grievance with his union.

On December 12, 2007, Walton experienced an allergic reac-
tion to one of the chemicals at work and went to the hospital.
Walton did not return to work the next day and filed a claim with
U.S. Steel for Sickness and Accident benefits, a monetary benefit
that U.S. Steel provides to bargaining unit employees if they
cannot perform the duties of their job as a result of sickness or
accident.  U.S. Steel paid Walton approximately $900 in sickness
and accident benefits every two weeks while he was on sick leave
from work.

Walton was examined by Nurse Practitioner Renee Lax on
February 4, 2008, for a return to work physical.  Walton had a
form signed by his treating physician stating he could return to
work the following day. Walton reported to Lax that he had a skin
patch test for allergies, which revealed that he was allergic to
nickel.  Walton denied working around nickel, and his supervisor,
Bruce West, informed Lax that there was no known exposure to
nickel at work and that he could accommodate Walton's allergy.
Walton returned to work the following day and worked through

2

February 21, 2008.  On February 21, 2008, Walton experienced another allergic reaction at work and took sick leave.  He received sickness and accident benefits during his leave.

On June 16, 2008, Walton filed a workers' compensation claim for his allergic reactions on December 12, 2007 and February 21, 2008.  Walton does not know who at U.S. Steel had knowledge of his workers' compensation claim, but he testified that U.S. Steel's claims unit in Pittsburgh, Pennsylvania, became aware of the claim through a letter from his doctor.  At some point after his doctor sent the letter to the claims unit, Walton met with Linda Woods, Manager of Employee Services at Gary Works, to get information about filing a workers' compensation claim.  On July 29, 2008, Dr. Mark Gardner examined Walton and determined that he could return to work if he was not exposed to dichlorophene, nickel, or propylene glycol, and was provided a gas rescue accommodation.  Dr. Gardner called the manager of the tin mill and was informed that the manager could not offer Walton such an accommodation.  Walton remained off work and on workers' compensation.  U.S. Steel did not challenge Walton's workers' compensation claim but subsequently terminated his benefits when it determined that Walton could return to work.

U.S. Steel management determined that they were able to accommodate Walton's medical restrictions in the coke products

3

division.  Walton went to the U.S. Steel Medical Department for a return to work physical on November 10, 2008.  Dr. Gardner directed Walton to be fit-tested for a respirator that he would need to work in the coke division.  Walton testified that Dr. Gardner agreed to test him at a later date so he could speak with his workers' compensation lawyer about returning to work in the coke division.  Walton left the Medical Department without being fit-tested for a respirator and did not return or contact a manager to be fit-tested.

On December 9, 2008, Staff Supervisor Maria Flourney sent a letter to Walton advising him to report to the plant medical department before December 19, 2008, and that the failure to report without justification would result in a five-day suspension preliminary to discharge.  Walton complained that he did not receive the letter until December 20, 2008, but he admitted that he became aware of the letter through a conversation with Human Resource Representative Sandra Armstrong on December 15, 2008. Armstrong read the contents of the letter to him over the phone and told him to report to the plant medical department.  Walton did not report to the medical department by the December 19, 2008, and explained that the union advised him that the matter could be handled after the holidays.

4

On December 29, 2008, Labor Relations Manager Laura Kocel issued Walton a five-day suspension for failing to comply with the instructions in the letter. Walton went to the U.S. Steel medical department to be fit-tested for a respirator on December 30, 2008, and received the discipline notice on January 2, 2009. Walton met with his union representative and U.S. Steel's managers to address the discipline.  Following the meeting, U.S. Steel converted Walton's initial five-day suspension to a discharge on February 26, 2009.

The union filed a grievance on Walton's behalf challenging the discipline and asserting that U.S. Steel violated the BLA.  A second meeting was held between Walton, his union representatives, and U.S. Steel management to address the discipline under the BLA's grievance procedure.  U.S. Steel denied Walton's grievance, which subsequently was appealed.  At a "Third Step" meeting, Labor Relations Manager Timothy Mosby made an offer to the union to resolve Walton's grievance and discharge, which was conditioned on Walton moving to the coke department.  Walton was not present at the meeting, and Mosby only communicated with Walton's union representatives about this offer.  Mosby was the only U.S. Steel manager with authority to resolve Walton's grievance and discharge.  Mosby and the union representatives held another meeting during which they discussed the possibility

of assigning Walton as a Utility Technician performing functions as a Truck Driver.  Mosby never discussed this option with Walton, and his grievance eventually was denied on the third level of review.  Mosby stated that he never rescinded an offer to resolve Walton's grievance and discharge, rather, the parties were unable to reach an agreement.  An arbitration was scheduled for April 1, 2011, and the Board of Arbitration found that U.S. Steel had proper cause to suspend and discharge Walton.

On April 20, 2009, Walton filed a charge with the Equal Employment Opportunity Commission (EEOC), alleging disability discrimination.  Walton was issued a Notice of Rights letter and filed his *pro se* complaint.  In his complaint, Walton alleges that he was discharged in retaliation for filing a grievances with the union, a charge of discrimination with the EEOC, his complaint in this matter, and a workers' compensation claim. U.S. Steel contends that Walton signed a Competition, Agreement, Stipulation, and Petition in the workers' compensation claim and that he is prohibited from pursuing this claim.  Walton also alleges that he was terminated in retaliation for a letter he sent to the Indiana Occupational Safety & Health Association (IOSHA) on December 16, 2008, complaining about his recent experiences at U.S. Steel.  Walton does not know whether U.S. Steel was aware of the letter he sent to IOSHA, and IOSHA has no

record of receiving the letter.  Walton's final complaint is that

he suffered intentional infliction of emotional distress as a

result of his termination, the termination of his workers'

compensation benefits, and U.S. Steel causing his second allergic

reaction.  U.S. Steel now moves for summary judgment on all of

Walton's claims.

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary

judgment is proper only if it is demonstrated that "there is no

genuine issue as to any material fact and the moving party is

entitled to a judgment as a matter of law." *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986); *Kidwell v. Eisenhauer,* 679 F.3d 957, 964 (7th Cir. 2012);

*Stephens v. Erickson,* 569 F.3d 779, 786 (7th Cir. 2009).  The

burden is upon the moving party to establish that no material

facts are in genuine dispute, and any doubt as to the existence

of a genuine issue must be resolved against the moving party.

*Adickes v. S.H. Kress & Company*, 398 U.S. 144, 160, 90 S.Ct.

1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Stephens*, 569 F.3d at

786.  A fact is material if it is outcome determinative under

applicable law.  There must be evidence on which the jury could

reasonably find for the nonmoving party.  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d

202, 212 (1986); *Stephens*, 569 F.3d at 786; *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008).  However, summary judgment may be entered against the non-moving party if it is unable to "establish the existence of an essential element to [the party's case, and on which [that party] will bear the burden of proof at trial . . . ." *Kidwell*, 679 F.3d at 964 (*citing Benuzzi v. Bd. of Educ.*, 647 F.3d 652, 662 (7th Cir. 2011) (*quoting Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2548).

Summary judgment is inappropriate for determination of claims in which issues of intent, good faith, and other subjective feelings play dominant roles. *Ashman v. Barrows,* 438 F.3d 781, 784 (7th Cir. 2006).  Upon review, the court does not evaluate the weight of the evidence, judge the credibility of witnesses, or determine the ultimate truth of the matter; rather, the court will determine whether there exists a genuine issue of triable fact.  *Wheeler*, 539 F.3d at 634 (*citing Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that

> properly can be resolved only by a finder of
> fact because they may reasonably be resolved
> in favor of either party.
>
> [T]his standard mirrors the standard for a
> directed verdict under Federal Rule of Civil
> Procedure 50(a), which is that the trial
> judge must direct a verdict if, under the
> governing law, there can be but one reason-
> able conclusion as to the verdict.
>
> *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511

*See also* ***Reeves v. Sanderson Plumbing Prods., Inc.***, 530 U.S. 133, 149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-122 (2000) (setting out the standard for a directed verdict); ***Celotex Corp.***, 477 U.S. at 322-23, 106 S.Ct. at 2553; ***Stephens,*** 569 F.3d at 786; ***Argyropoulos v. City of Alton***, 539 F.3d 724, 732 (7th Cir. 2008) (stating that a genuine issue is one on which a reasonable fact finder could find for the nonmoving party); ***Springer v. Durfling-er,*** 518 F.3d 479, 483 (7th Cir. 2008)(stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

Walton alleges that he was retaliated against for filing a charge of discrimination based on a disability with the EEOC, a grievance with his union, his complaint in this matter, a workers' compensation claim, and a complaint with IOSHA.  U.S. Steel first contends that Walton cannot sustain a claim for

retaliation under the Americans with Disabilities Act because Walton failed to exhaust his administrative remedies.

The Americans with Disabilities Act ("ADA") prohibits retaliation by the employer in response to an employee filing a charge with the EEOC.  42 U.S.C. §12203(a); ***Turner v. The Saloon, Ltd.***, 595 F.3d 679, 690 (7th Cir. 2010). Unlawful retaliation occurs when an employer takes actions that discriminate against an employee because he has opposed a practice forbidden by the ADA. 42 U.S.C. §12203(a); ***Turner,*** 595 F.3d at 690.  An employer effectively retaliates against an employee "by taking actions not directly related to [ ] employment or by causing [ ] harm outside the workplace."  ***Burlington Northern and Santa Fe Ry. Co. v. White***, 548 U.S. 53, 63, 126 S.Ct. 2405, 2412, 165 L.Ed.2d 345 (2006). *See also* ***Thompson v. North American Stainless, LP***, ___ U.S. ___, 131 S.Ct. 863, 868, 178 L.Ed.2d 694 (2011).  To state a claim for retaliation, "the plaintiff must allege the following: (1) he or she engaged in a statutorily protected activity; (2) he or she suffered an adverse action; and (3) a causal link between the protected activity and the adverse action." ***Ryan v. Pace Suburban Bus Div. of Regional Transp. Authority***, 837 F.Supp.2d 834, 839 (N.D. Ill. 2011) (*citing* ***Turner,*** 595 F.3d at 690). *See also* ***Hicks v. Forest Preserve District of Cook County, Illinois***, 677 F.3d 781, 787 (7th Cir. 2012).

Before an employee may file a complaint alleging violations of the ADA, he must exhaust his administrative remedies. ***Elliott v. Dedelow***, 115 Fed.Appx. 881, 883 (7th Cir. 2004). The plaintiff first must file a charge of discrimination with the Equal Employment Opportunities Commission. *See **Elliott***, 115 Fed.Appx. at 883; 42 U.S.C. §2000e—5.  The EEOC either will choose to pursue the claim on the plaintiff's behalf or will issue a Dismissal and Notice of the Right to Sue.  42 U.S.C. §2000e—5.  Generally, a plaintiff may not include claims in his lawsuit that were not included in his EEOC charge. ***Cheek v. Western and Southern Life Insurance Co.***, 31 F.3d 497, 500 (7th Cir. 1994).  The Seventh Circuit has carved out several exceptions to this general rule. *See **Cheek,*** 31 F.3d at 500.  Claims raised for the first time in the complaint that are like or reasonably related to the allegations in the EEOC charge and grow out of the allegations may be heard by the court. ***Geldon v. South Milwaukee School District***, 414 F.3d 817, 819 (7th Cir. 2005).  The Seventh Circuit also has allowed retaliation claims that arose from the original EEOC charge to proceed although they were not brought before the EEOC. ***Horton v. Jackson County Bd. Of County Commissioners***, 343 F.3d 897, 898 (7th Cir. 2003).  However, the retaliation must have occurred after the EEOC charge was filed.  If the alleged retaliatory act arose before the EEOC charge was commenced, it must be

included in the charge. *McKenzie v. Illinois Dept. of Transportation*, 92 F.3d 473, 483 (7th Cir. 1996).

Walton's claim for retaliation under the ADA fails on several accounts. First, he did not exhaust his administrative remedies. It is not clear what statutorily protected act Walton alleges caused him to suffer an adverse action. However, the only adverse act contained in his complaint was his discharge, which was finalized on April 1, 2009, when the Board of Arbitration issued its final decision confirming that U.S. Steel had proper cause for the suspension and discharge. Walton did not file his charge of discrimination with the EEOC until 19 days later, on April 20, 2009. Because the retaliatory act, his discharge, occurred before he filed his complaint with the EEOC, Walton was required to include any complaint of retaliation in his EEOC charge. Furthermore, the chronology of events defeats Walton's claim for retaliation because he cannot show a causal link between his EEOC charge and termination. Walton was terminated before he filed a charge of discrimination with the EEOC, rendering it impossible to show that he was terminated because he filed the charge. *See Sweat v. Peabody Coal Co.,* 94 F.3d 301, 305 (7th Cir. 1996). For this reason, Walton cannot show a causal link between his statutorily protected activity of filing an EEOC charge and his termination.

12

Walton faces a similar challenge with his claim that he was retaliated against for filing a grievance with his union and his complaint with this court.  Walton filed his grievance after his five-day suspension was converted to a discharge and filed the complaint after his grievance was affirmed by the arbitration board.  With both complaints, the retaliatory act, his discharge, occurred before Walton engaged in a statutorily protected activity.  Because the causal connection can be established only if the protected activity preceded the retaliatory conduct, Walton has not shown a causal connection between his termination and statutorily protected activities, and summary judgment must be entered in favor of U.S. Steel.

More importantly, Walton's complaint that he was retaliated against for filing a grievance with his union fails because this court lacks jurisdiction to hear his claim.  Claims for retaliation for filing a grievance fall under the National Labor Relations Act.  *Carr v. Metals*, 2009 WL 483167, *12 (N.D. Ind. Feb. 24, 2009).  The NLRA states that it is an unfair labor practice for an employer "to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this chapter."  29 U.S.C. §158(a)(4).  The NLRA provides a comprehensive system to remedy conduct that is protected or prohibited by the Act and deprives federal and state courts of

jurisdiction.  A plaintiff who desires to proceed on a claim that falls under the NLRA must show that he has first complied with the steps set forth by the NLRA and filed his charge with the National Labor Relations Board for resolution.  *Carr*, 2009 WL 483167 at *12.

Walton has not provided any evidence that he filed this claim for retaliation for filing a grievance with the NLRB.  Because at this point in the litigation Walton must provide evidence to show that his claims have merit, his failure to show that he complied with the procedural prerequisites and filed a complaint with the NLRB is fatal to his claim.  *Carr*, 2009 WL 483167 at *12.  Absent such proof, this court lacks jurisdiction and summary judgment must be awarded to U.S. Steel on this issue.

With respect to his claim for retaliation for filing a complaint, Walton alternatively has argued that he was retaliated against because he was denied reinstatement when he filed his complaint with this court.  At his deposition, Walton complained that U.S. Steel made an offer to rescind his termination, but upon learning that he filed a federal lawsuit, U.S. Steel revoked the offer and stated that it would not negotiate a job with someone who had a pending lawsuit.  Walton has not identified who made this statement, nor has he alleged that it was made by someone with authority to resolve his grievance.  Remarks and

statements by nondecision-makers are insufficient to establish a
prima facie case. *Simmons v. Chicago Board of Education*, 289
F.3d 488, 492 (7th Cir. 2002).  The undisputed evidence shows
that Mosby, the Labor Relations Manager, was the only individual
who had authority to resolve Walton's grievance and that he never
spoke to Walton about a compromise.  Walton has made no attempt
to establish that Mosby was the individual who made this state-
ment or that the speaker had authority to resolve his termina-
tion.  Therefore, the only evidence of record shows that the sole
individual with authority to resolve Walton's claim did not make
the remark to Walton, leaving the court to conclude that, if the
statement was made, it was made by a nondecision-maker and cannot
support a prima facie case. *See Harney v. City of Chicago*, 2012
WL 6097336, *4 (7th Cir. Dec. 10, 2012) (explaining that evidence
that is non-admissible in content cannot be considered on summary
judgment).

Furthermore, even if the court was willing to assume that
Mosby made the statement, "[a]n employer's failure to grant an
employee a discretionary benefit to which the employee is not
automatically entitled is not an adverse employment action."
*Sicher v. Merrill Lynch*, 2011 WL 892746, *3 (N.D. Ill. 2011).
The decision to make or to rescind settlement offers is within
the discretion of the employer. *Sicher*, 2011 WL 892746 at *4.

15

Therefore, if U.S. Steel decided to rescind the offer to revoke Walton's discharge, its decision was not an adverse employment action.

Walton also alleges that he was retaliated against for filing a whistleblower complaint with IOSHA.  Indiana does not recognize a tort of retaliatory discharge for notifying IOSHA of a potential violation. ***Groce v. Eli Lilly & Co.***, 193 F.3d 496, 503-04 (7th Cir. 1999).  The IOSHA statute encompasses its own remedies and does not provide for an independent cause of action. To pursue a claim for a retaliatory discharge for filing an IOSHA complaint, Walton would need to proceed according to the IOSHA statute.  Moreover, even if IOSHA recognized an independent tort, Walton has submitted no evidence to show that he in fact sent the letter to IOSHA or that U.S. Steel was aware of his letter.  Rather, the record unequivocally shows that IOSHA did not receive Walton's letter and that U.S. Steel had no knowledge of it.  Absent any evidence, Walton cannot establish that he was terminated because of his complaint with IOSHA.

Walton next alleges that he was terminated in retaliation for filing a workers' compensation claim.  Walton filed his workers' compensation claim before he was terminated, so he does not face the same challenge to establish causation as he did for

16

his claim of retaliation for filing a charge with the EEOC, a grievance with his union, and his complaint.

In Indiana, employment is generally at-will. However, Indiana recognizes a cause of action for employees terminated in retaliation for filing a worker's compensation claim. ***Hudson v. Wal-Mart Stores, Inc.***, 412 F.3d 781, 785 (7th Cir. 2005). To establish a claim for retaliatory discharge, the employee must establish a causal connection between his termination and filing the workers' compensation claim by direct or indirect evidence. The termination must be the sole reason for the employee's discharge. ***Hudson***, 412 F.3d at 785.  If the employee does not have direct evidence, he may point to the proximity of the discharge to his claim for workers' compensation benefits or show that the cited explanations for his discharge were a pretext.  However, timing alone is not sufficient to establish a causal connection. The plaintiff must point to some evidence that would make the suspicious timing evidence stronger. ***Hudson***, 412 F.3d at 787.  A plaintiff can establish pretext by showing that his employer's explanation for the firing "was either dishonest or 'patently inconsistent with the evidence before the court.'" ***Hudson***, 412 F.3d at 785 (*citing* ***Markley Enters., Inc. v. Grover***, 716 N.E.2d 559, 565 (Ind. App. 1999)). Causation generally is an issue left for the trier of fact, but when no reasonable trier of fact could

17

conclude discharge was caused by prohibited retaliation, summary judgment may be entered against the plaintiff. ***Watkins v. Sommer Metalcraft Corp.***, 844 F.Supp. 1321, 1326 (S.D. Ind. 1994).

Walton has failed to establish a causal connection between his workers' compensation claim and his discharge. As it stands, the only evidence supporting such an inference is that his termination occurred after he filed his workers' compensation claim. This is not enough to establish a causal connection and survive summary judgment. ***Hudson***, 412 F.3d at 786. Walton has submitted no other evidence, and the record is devoid of anything that could make the timing evidence stronger or could convince a reasonable jury to find in his favor. In fact, Walton was unable to show that anyone at U.S. Steel who was responsible for his termination even had knowledge of his workers' compensation claim. Absent such knowledge, there can be no causal link. *See* ***Luckie v. Ameritech Corp.***, 389 F.3d 708, 715 (7th Cir. 2004).

Walton's final complaint is that he was subjected to intentional infliction of emotional distress because U.S. Steel caused his second allergic reaction, terminated his workers' compensation benefits, and terminated his employment. "Intentional infliction of emotional distress is committed by 'one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another[.]'" ***Branham v. Celadon***

18

*Trucking Services, Inc.*, 744 N.E.2d 514, 522—23 (Ind. App. 2001) (*citing* and *quoting* **Ledbetter v. Ross**, 725 N.E.2d 120, 123—24 (Ind. App. 2000)).  The basis of the tort is the intent to harm emotionally. **Ledbetter,** 725 N.E.2d at 124. The tort occurs when a defendant (1) engages in extreme and outrageous conduct that (2) intentionally or recklessly (3) causes (4) severe emotional distress to another.  **Branham**, 744 N.E.2d at 523.

Indiana courts regularly quote Section 46 of the Restatement (Second) of Torts in describing the extreme and outrageous conduct required to sustain a cause of action for this tort:

> Extreme and outrageous conduct. The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Creel v. I.C.E. & Associates, Inc.*, 771 N.E.2d 1276, 1282 (Ind. App. 2002); **Branham**, 744 N.E.2d at 523; *Bradley v. Hall*, 720

19

N.E.2d 747, 752—53 (Ind. App. 1999); *Gable v. Curtis,* 673 N.E.2d 805, 809—10 (Ind. App. 1996).

Defining extreme and outrageous conduct depends upon the prevailing cultural norms and values. *Bradley*, 720 N.E.2d at 753. "In the appropriate case, the question can be decided as a matter of law." *Dietz v. Finlay Fine Jewelry Corp.*, 754 N.E.2d 958, 970 (Ind. App. 2001). *Compare Bradley*, 720 N.E.2d at 752 (finding that a genuine issue of material fact existed as to whether a supervisor engaged in extreme and outrageous conduct by allegedly shouting at the employee, criticizing her work in front of other employees, inquiring about her menopause and whether her husband was sexually impotent from his diabetes, and misrepresenting the security of her position of employment) and *Mitchell v. Steven-son*, 677 N.E.2d 551, 563—64 (Ind. App. 1997) (finding that dis-interring deceased's remains, removing headstone, and cremating deceased against the wishes of deceased and other family members was extreme and outrageous conduct) with *Lindsey v. DeGroot*, 898 N.E.2d 1251, 1264—65 (Ind. App. 2009) (finding that dairy employ-ees' alleged nuisance, negligence, trespass, and criminal mis-chief were not extreme and outrageous conduct); *Lachenman v. Stice*, 838 N.E.2d 451, 457 (Ind. App. 2005) (finding that failure to control dog which attacked and killed the plaintiff's dog was not extreme and outrageous conduct); *Conwell v. Beatty*, 667

20

N.E.2d 768, 775—76 (Ind. App. 1996) (finding no outrageous con-
duct where a sheriff announced a deputy's arrest at a press
conference and refused to assist that deputy in completing
retirement forms); and *Gable,* 673 N.E.2d at 811 (holding that
large number of phone calls lacking obscenity or threatened
violence, whether or not justified, was not sufficiently outra-
geous to state a cause of action).

Walton first complains that he suffered emotional distress
because U.S. Steel caused his second allergic reaction.  This
implicates the Workers' Compensation Act because Walton previ-
ously received benefits under the Act for his allergic reaction
and signed a release waiving all claims, past, present, and
future, relating to the incident.  Under the Indiana Worker's
Compensation Act, "[t]he rights and remedies granted to an
employee . . . on account of personal injury . . . by accident
shall exclude all other rights and remedies of such employee
. . . on account of such injury . . . except for [remedies for
compensating victims of violent crimes]." Ind. Code. §22—3—2—6.
The Indiana Workers' Compensation Act is the exclusive remedy for
an employee subject to the Act, and it has abolished all common
law actions against an employer likewise subject to the Act.
*Kottis v. U.S. Steel Corp.*, 543 F.2d 22, 24 (7th Cir. 1976)
(*quoting* *Hickman v. W. Heating & Air Conditioning Co.,* 207

21

F.Supp. 832, 833 (N.D. Ind. 1962)).  *See also* **Sims v. United**

**States Fidelity & Guaranty Co.**, 782 N.E.2d 345, 349—50 (Ind.

2003) (exclusivity provision bars a court from hearing common law

actions for the same injury that the employee is entitled to

receive worker's compensation benefits).

However, the injury must result from an accident, and there-

fore intentional acts are outside the scope of the Act.  *See*

**Williams v. Delta Steel Corp.**, 695 N.E.2d 633, 635 (Ind. App.

1998).  To show that an act was intentional, the plaintiff must

allege that the employer either deliberately intended to inflict

injury or had actual knowledge that an injury was likely to

occur.  **Baker v. Westinghouse Elec. Corp.**, 637 N.E.2d 1271, 1275

(Ind. 1994).  Once an employee has elected to receive compensa-

tion under the Workers' Compensation Act, he is precluded from

initiating a common lawsuit. By accepting and receiving compensa-

tion, the employee "concedes that the injury was accidental in

nature and that it arose out of and in the course of employment."

**Williams**, 695 N.E.2d at 635. The employee may not repudiate his

position and claim that the injury was intentional. **Williams**, 695

N.E.2d at 635.

The settlement of Walton's workers' compensation claim is

fatal to Walton's IIED claim for two reasons.  Walton both waived

his right to pursue any claims, past, present, and future, aris-

ing from the second allergic reaction, and his acceptance of
benefits serves as an acknowledgment that U.S. Steel's actions
were not intentional.  *See **Williams***, 695 N.E.2d at 635 (explain-
ing that a claimant admits that his employer's acts were uninten-
tional when he accepts benefits under the Workers' Compensation
Act).  Absent some evidence of duress or coercion to enter the
agreement, Walton cannot revoke his waiver and pursue a tort
claim against U.S. Steel.  The Workers' Compensation Act is the
exclusive remedy for unintended work-related injuries, and by
entering this agreement and accepting benefits, Walton is pre-
cluded from arguing that U.S. Steel's actions were intentional
and cannot pursue a claim for intentional infliction of emotional
distress arising from his second allergic reaction.

Not only has Walton conceded that U.S. Steel's actions were
not intentional by receiving benefits and settling the claim, he
also has produced no facts to show that U.S. Steel had Walton
return to work with the intent of injuring him, that he suffered
severe emotional distress, or that U.S. Steel's actions were
extreme and outrageous.  Walton was cleared by his physician and
the plant doctor to return to work, and neither Walton nor his
manager believed there was nickel present in the tin mill where
Walton was assigned.  Walton has pointed to no evidence to show
that U.S. Steel had Walton return to work in this department with

23

the purpose of causing his second allergic reaction.  Nor has he
demonstrated that West acted in an extreme and outrageous manner
when he told Nurse Lax that Walton's condition could be accommo-
dated because there was no nickel in the tin mill.  Because
Walton would bear the burden to prove that U.S. Steel intended
his injury and that their actions were extreme and outrageous,
and he has produced no evidence in support, summary judgment must
be awarded to U.S. Steel on this claim.

Walton next complains that he suffered IIED because his
workers' compensation benefits were terminated.  However, the
Indiana Workers' Compensation Board has exclusive jurisdiction to
determine whether an employer has committed an independent tort
in adjusting or settling an injured workers' claim.  Ind. Code
§22-3-4-12.1(a); *Sims*, 782 N.E.2d at 349.  Walton's IIED claim is
a tort arising from the manner in which U.S. Steel settled his
claim.  Therefore, it falls within the exclusive jurisdiction of
the Workers' Compensation Board, and cannot be heard by this
court.

Finally, Walton alleges that he suffered emotional distress
because he was discharged, but he has failed to show that a
reasonable jury could conclude that U.S. Steel's actions were
extreme and outrageous.  Generally, disciplining and terminating
an employee is not severe enough to meet the standard to show

24

extreme and outrageous conduct.  *McDowell v. J.B. Hunt Transport, Inc.*, 2004 WL 1878334, *6 (N.D. Ill. 2004) (*citing* *Socorro v. IMI Data Search, Inc.*, 2003 WL 1964269, *5 (N.D. Ill. April 28, 2003) (explaining that termination based on false information of criminal history, which was then repeated to other potential employers, was not extreme and outrageous conduct to give rise to IIED claim)).  The employee must show that the termination was extreme or outrageous.  This may be accomplished by showing threats, insults, harassment, or harsh language. *See* *Leetch v. Heniff Transportation Systems*, 2010 WL 3171771, *2 (N.D. Ill. Aug. 11, 2010).  A termination that was done matter-of-factly will not satisfy this standard.  *Leetch*, 2010 WL 3171771 at *2.

There is nothing of record to show that U.S. Steel acted in an extreme and outrageous manner when terminating Walton's employment.  Walton has not complained or provided evidence of insults, threats, or harassment.  Rather, it appears that he was terminated in a civil, professional manner and that his termination was supported by adequate reason. U.S. Steel's stated reason for terminating Walton was confirmed on appeal and approved by the arbitration board, and at each level of the grievance process it was determined that U.S. Steel had sufficient cause to terminate Walton.  Without any evidence to contradict this multi-level confirmation of U.S. Steel's actions as reasonable, or to show

that U.S. Steel acted in an outrageous manner during the act of terminating Walton, he falls far short of establishing that U.S. Steel acted in an extreme and outrageous manner by terminating his employment.  Accordingly, summary judgment must be awarded in favor of U.S. Steel on this claim.

_____

Based on the foregoing, the Motion for Summary Judgment [DE 54] filed by the defendant, United States Steel Corporation, on April 30, 2012, is **GRANTED.**

ENTERED this 21st day of December, 2012

s/ ANDREW P. RODOVICH
United States Magistrate Judge

26